Leah T. Handelman
Holly A. Seymour
GARLINGTON, LOHN & ROBINSON, PLLP
350 Ryman Street • P. O. Box 7909
Missoula, MT  59807-7909
Phone (406) 523-2500
Fax (406) 523-2595
lthandelman@garlington.com
haseymour@garlington.com

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| EMCASCO INSURANCE COMPANY AND EMPLOYERS MUTUAL CASUALTY COMPANY, | Cause No.  CV-23-62-BU-BMM-JTJ |
| Plaintiffs, | COMPLAINT FOR DECLARATORY RELIEF |
| v. | |
| VAN DYKEN DRILLING, INC., | |
| Defendant. | |

Plaintiffs EMCASCO Insurance Company and Employers Mutual Casualty

Company (collectively "EMC"), by and through counsel of record, Garlington,

4859-9074-5214                                                                 1

Lohn & Robinson, PLLP for their Complaint for Declaratory Judgment, states and alleges as follows:

## I.     PARTIES, JURISDICTION, AND VENUE

1.     EMC is a corporation organized and existing under the laws of Iowa, with its principal place of business in Des Moines, Iowa.  EMC is an insurance company which is authorized to conduct business in Montana.

2.     Defendant Van Dyken Drilling, Inc. ("Van Dyken") is a corporation organized and existing under the laws of Montana, with its principal place of business in Belgrade, Montana.

3.     EMCASCO Insurance Company issued a General Liability Policy to Van Dyken bearing policy number 5X4-85-91—18 and with a policy period from June 1, 2017 to June 1, 2018 ("GL Policy").  A true and correct copy of the GL Policy is attached as Exhibit A ("Ex. A").

4.     Employers Mutual Casualty Company issued a Commercial Umbrella Policy to Van Dyken bearing policy number 5J4-85-91—18 and with a policy period from June 1, 2017 to June 1, 2018 ("Umbrella Policy").  A true and correct copy of the Umbrella Policy is attached as Exhibit B ("Ex. B").

5.     Van Dyken seeks coverage under the foregoing policies for claims brought against it in Gallatin County in an action styled:  *Vallance v. Heinrich et*

*al.*, Montana Eighteenth Judicial District Court, Gallatin County, Cause No. DV-2020-1038C (the "Underlying Action").

6.     Jurisdiction is proper in this Court under 28 U.S.C. § 1332 because the matter in controversy exceeds $75,000.00 and EMC and Van Dyken are citizens of different states.

7.     Venue is proper in the Butte Division of the District of Montana as Van Dyken's principal place of business is in Gallatin County, the events giving rise to the Underlying Action occurred in Gallatin County, and any judgment against Van Dyken will be obtained in Gallatin County pursuant to the Underlying Action further described below.

8.     There is an actual justiciable controversy between EMC and Van Dyken concerning their rights and obligations under the Policies.

## II.     GENERAL ALLEGATIONS

9.     The parties' rights and obligations under the Policies, specifically whether EMC has a duty to defend or indemnify Van Dyken on the claims alleged against it in the Underlying Action is the subject of this action.

**A.     The Underlying Action**

10.     Ricki Lee Vallance, Tyler Stolz, and their minor child, L.S. (collectively "Underlying Plaintiffs") allege lead exposure and damages therefrom and allegedly resulting from a water well servicing a home they rented located at

477 Reese Creek Road in Belgrade, Montana ("the Property"). The Property is owned by Dusty Bottom Ranch ("DBR").

11.    Van Dyken drilled a new well on the Property on May 16, 2016 and continued to work on the well from May 24, 2016 to May 25, 2016. Van Dyken installed the pump system on May 31, 2016, at which point the well was completed.

12.    On October 2, 2017, Van Dyken hooked up the new well to the home on the Property where Underlying Plaintiffs were living at the time.

13.    On September 18, 2020, Underlying Plaintiffs filed suit against DBR, Erica and Mattthew Heinrich and David Richards (collectively "DBR Defendants"). A true and correct copy of the Underlying Complaint is attached as Exhibit C. ("Ex. C").

14.    The allegations of the Underlying Complaint can be summarized as follows:

DBR entered into a rental agreement with Underlying Plaintiffs Vallance and Stolz in September 2015 at which point they began residing on the Property. The Underlying Complaint alleges that the DBR Defendants installed a new water well on the Property in the fall of 2017, which provided all water to the Property. The Underlying Complaint further alleges that the DBR Defendants failed to test the new water well for lead and ensure that it was safe for use. According to the

Underlying Complaint, Underlying Plaintiffs used the water from the well for all

their water needs on the Property, including but not limited to drinking, cooking,

cleaning, bathing, and laundry.

Underlying Plaintiff Vallance was pregnant in the fall of 2017 and allegedly

consumed the water during her pregnancy on a daily basis.  The Underlying

Complaint alleges that following their daughter, L.S.'s birth in December 2017,

Underlying Plaintiffs continued to use the water from the well for all their needs

and that L.S. began drinking the well water directly by the time she was

approximately 6 months old.  According to the Underlying Complaint, L.S.'s blood

test results from her nine-month pediatric appointment indicated elevated levels of

lead in her blood.  As a result, Underlying Plaintiffs allegedly began looking for

the source of lead and in October 2018 discovered that the water at the Property

was contaminated with lead.

The Underlying Complaint alleges that the DBR Defendants failed to

properly install, test and/or maintain the well water to ensure it was safe for human

consumption and not contaminated with lead.  As a result, the DBR Defendants

allegedly negligently and/or unlawfully exposed Underlying Plaintiffs to harm and

caused them damages, including bodily harm, emotional distress, loss of

enjoyment of life, and loss of opportunity as well as aggravating, persistent and

permanent injuries to their bodies and psyche, requiring medical attention, and the inability to carry out normal activities including daily routines.

The Underlying Complaint further alleges that the DBR Defendants knew or should have been aware of the lead on the Property and that the Underlying Plaintiffs' exposure to it would cause harm.  The DBR Defendants allegedly willfully and deliberately concealed their knowledge of this harm and failed to provide the Property in a state that was fit for human habitation.

15.    The Underlying Complaint contains eight specific counts against the DBR Defendants.

16.    Count I of the Underlying Complaint is for Negligence and alleges that the DBR Defendants owed a duty to act with reasonable care and conduct business and operations in a manner so as not to jeopardize Underlying Plaintiffs' property, person and interest, a duty to provide habitable and sanitary living conditions free of lead in water in accordance with statutory and common law, a duty to supervise employees and agents, and a duty not to misrepresent material facts. DBR Defendants allegedly breached their duties by negligently exposing the Underlying Plaintiffs to lead through a number of alleged failures and misrepresentations, thus causing Underlying Plaintiffs damages.

17.    Count II of the Underlying Complaint is for Breach of Contract and alleges that the rental agreement is a contract, and that Underlying Plaintiffs

fulfilled their obligations under the agreement, but that the DBR breached the

rental agreement by failing to deliver and maintain property in a habitable manner.

As a result, Underlying Plaintiffs allegedly did not receive the benefit of a safe

environment to live in or the quiet use and enjoyment of the Property.  This Count

seeks damages for the breach plus ongoing interest, attorneys' fees, costs and other

expenses.

18.     Count III of the Underlying Complaint is for Breach of the Covenant

of Good Faith and Fair Dealing and alleges that the rental agreement contains an

implied covenant of good faith and fair dealing that requires honesty in fact and the

observance of reasonable standards of fair dealing in trade.  The DBR Defendants

allegedly breached the implied covenant of good faith and fair dealing by

depriving Underlying Plaintiffs of the Property in a condition fit for its intended

use.

19.     Count IV of the Underlying Complaint is for Violation of the

Montana Residential Landlord and Tenant Act and alleges that the Act requires a

landlord to deliver possession of the premises to the tenant in compliance with

rental agreement and do whatever necessary to put and keep premises in fit and

habitable condition.  The DBR Defendants allegedly violated the Act by keeping

the Property unfit and uninhabitable by providing Underlying Plaintiffs with a

515e3e72d8315eca

property serviced by water contaminated with lead.  This Count seeks treble damages under the Act, attorneys' fees, and costs.

20.     Count V of the Underlying Complaint is for Infliction of Emotional Distress and alleges that as a result of the DBR Defendants' actions, Underlying Plaintiffs suffered serious or severe emotional distress which was a reasonably foreseeable consequence of the DBR Defendants' actions and inactions.  This Count alleges both negligent and intentional infliction of emotional distress by the DBR Defendants.

21.     Count VI of the Underlying Complaint is for Violation of Montana's Consumer Protection Act and alleges that the DBR Defendants engaged in unfair and deceptive trade practices by concealing or omitting to disclose material facts to Underlying Plaintiffs, namely that the water on the Property was contaminated with lead.  This Count further alleges that the DBR Defendants failed to investigate; failed to disclose their failure to investigate; and failed to disclose that the water was contaminated.  Underlying Plaintiffs allegedly were damaged by relying on these misrepresentations and omissions and seek treble damages and attorney fees.

22.     Count VII of the Underlying Complaint is for Fraud and alleges that the DBR Defendants knew or should have known of facts creating a high probability of injury to Underlying Plaintiffs and that they intentionally

disregarded such probability.  This Count further alleges that the DBR Defendants made misrepresentations of fact with knowledge of their falsity and concealed material facts with the purpose of depriving Underlying Plaintiffs of their legal rights and otherwise causing damage to Underlying Plaintiffs and that such conduct was malicious, fraudulent and egregious so as to justify an award of punitive or exemplary damages in amount sufficient to punish the DBR Defendants.

23.    Count VIII of the Underlying Complaint is for Constructive Fraud and alleges that the DBR Defendants represented that they would deliver and maintain the Property in a habitable and fit manner, which included ensuring that the Property would be free from water contaminated with lead. This Count further alleges that the DBR Defendants had a fiduciary duty to Underlying Plaintiffs to act with the utmost good faith and fairness in renting property. Underlying Plaintiffs allegedly relied on this fiduciary duty relationship and the DBR Defendants breached their duty and in doing so gained an unfair advantage over Underlying Plaintiffs by prejudicially misleading them and causing them damages.

24.    Upon information and belief, Van Dyken learned of the claim giving rise to the Underlying Action in 2021, when it was called in for a deposition.

25.    On June 20, 2023, DBR filed an Amended Answer and Third-Party Complaint against Van Dyken ("Underlying Third-Party Complaint").  A true and

correct copy of the Underlying Third-Party Complaint is attached as Exhibit D ("Ex. D").

26.     The Underlying Third-Party Complaint alleges that Van Dyken drilled the well and installed the pump system for subject residence and supplied all the pipes and fittings.  DBR allegedly relied on Van Dyken to install the water well and associated plumbing in a good workmanlike condition, free of contamination. The Underlying Third-Party Complaint further alleges that any alleged contamination from the well and associated plumbing, if proved by Underlying Plaintiffs, is or may be due to the conduct and omissions of Van Dyken. According to the Underlying Third-Party Complaint any negligence or other wrongdoing of Van Dyken or the liability of DBR to Underlying Plaintiffs must be attributed to Van Dyken in accordance with jury's determination of proportionate fault.

27.     Van Dyken first tendered the claim to EMC under the Policies upon receipt of the Underlying Third-Party Complaint.

28.     EMC issued a reservation of rights letter to Van Dyken on September 5, 2023, under which it agreed to provide Van Dyken with a defense of the allegations in the Underlying Action under a complete reservation of rights.  A true and correct copy of the September 5, 2023 reservation of rights letter is attached as Exhibit E ("Ex. E").

**B.      Relevant GL Policy Provisions**

29.     The GL Policy contains Commercial General Liability Coverage

Form CG 00 01 04 13, which provides Bodily Injury and Property Damage

Liability Coverage under Section I, Coverage A as follows:

**SECTION I – COVERAGES**

**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1.      Insuring Agreement**

     **a.**     We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.  We may at our discretion, investigate any "occurrence" and settle a claim or "suit" that may result.  But:

              . . .

     **b.**     This insurance applies to "bodily injury" and "property damage" only if:

        **(1)**    The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

        **(2)**    The "bodily injury" or "property damage" occurs during the policy period; . . .

Ex. A at 10.

30.     The GL Policy contains the following pertinent exclusions, applicable

to Coverage A:

**2.      Exclusions**
This insurance does not apply to:

a.    **Expected Or Intended Injury**
"Bodily injury" or "property damage" expected or intended from the standpoint of the insured.  This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

. . .

f.    **Pollution**
**(1)**    "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

. . .

**(e)**    At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

Ex. A at 11-12.

31.    The GL Policy also contains Medical Payments Coverage ("MPC")

under Coverage C as follows:

**COVERAGE C – MEDICAL PAYMENTS**
**1.    Insuring Agreement**

a.    We will pay medical expenses as described below for "bodily injury" caused by an accident:

. . .

**(3)**    Because of your operations; provided that:
**(a)**    The accident takes place in the "coverage territory" and during the policy period;
**(b)**    The expenses are incurred and reported to us within one year of the date of the accident; and

> **(c)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.
>
> . . .

Ex. A at 17.

32. The MPC contains the following pertinent exclusions:

> **2.** **Exclusions**
>
> We will not pay expenses for "bodily injury":
>
> **f.** **Products-Completed Operations Hazard**
> Included within the "products-completed operations hazard".
>
> **g.** **Coverage A Exclusions**
> Excluded under Coverage **A.**

Ex. A at 17.

33. In addition to the foregoing Coverage A and Coverage C exclusions, the GL Policy contains a Lead Exclusion endorsement as follows:

> **EXCLUSION – LEAD**
> . . .
>
> **A.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** and Paragraph **2., Exclusions** of **Section I – Coverage B – Personal and Advertising Injury Liability:**
>
> **2.** **Exclusions**
> This insurance does not apply to:
>
> **LEAD**
> **a.** "Bodily injury", "property damage", or "personal and advertising injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected ingestion of,

inhalation of, absorption of, exposure to, or presence of "lead".

. . .

**B.**     The following definition is added to the **Definition** section:

"Lead" means lead in any form, whether in combination with an ingredient of, or as a component of any substance or material.

Ex. A at 44.

34.     The GL Policy also contains the following endorsement which precludes coverage for Continuous or Progressive Injury or Damage, in pertinent part, as follows:

**CONTINUOUS OR PROGRESSIVE INJURY OR DAMAGE EXCLUSION**

**A.**     **Section I – Coverages, Subparagraph 2. Exclusions,** of **Coverage A – Bodily Injury and Property Damage Liability** is amened to add the following:

**Exclusion for "Bodily Injury" or "Property Damage" Which Commences Prior to Inception of Policy**

This insurance does not apply to any "bodily injury" or "property damage" which was in progress as of the inception date of this policy or which commenced, or which is alleged to have occurred, prior to the inception or effective date of this policy, whether such "bodily injury" or "property damage" is known, unknown or should have been known by any "insured." We have no duty to defend any "suit" or claim alleging such "bodily injury" or "property damage."

This exclusion applies regardless of whether any "bodily injury" or "property damage" which commenced prior to the inception or effective date of this policy or which is, or is alleged to be occurring as of the inception of this policy, continues or progressively deteriorates during or after this policy period.

**B.**   For purposes of this endorsement only, the following **Definitions** have been added or modified as indicated below:

. . .

**2.**   **Section V – Definitions, Subparagraph 13.** is deleted and replaced by the following:

**13.**   "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.  However, this definition does not include any occurrence which commenced prior to the effective date of this policy.

Ex. A at 46.

35.   The GL Policy further contains an endorsement which precludes

coverage for mixed dust pneumoconiosis lung disease or ailment as follows:

**EXCLUSION – MIXED DUST PNEUMOCONIOSIS, LUNG DISEASE OR AILMENT**

. . .

This insurance does not apply to:

Any injury, damage, expense, cost, loss, liability, defense or legal obligation arising out of, resulting from or in any way related to, in whole or in part, mixed dust pneumoconiosis or any lung disease, including but not limited to, pleural plaques, asbestosis, silicosis, lung cancer, emphysema, bronchitis, or other pneumoconiosis-related ailment, including, but not limited to, arthritis, cancer, lupus, heart, kidney or gallbladder disease.

Ex. A at 73.

36.   The GL Policy also contains the following conditions under Section

IV:

### SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

. . .

**2.**     **Duties in The Event Of Occurrence, Offense, Claim Or Suit**

    **a.**     You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim.

. . .

**4.**     **Other Insurance**
If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:

    **a.**     **Primary Insurance**
This insurance is primary except when Paragraph **b.** below applies.  If this insurance is primary our obligations are not affected unless any of the other insurance is also primary.  Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

    **b.**     **Excess Insurance**
    **(1)**     This insurance is excess over:
        **(a)**     Any of the other insurance, whether primary, excess, contingent or on any other basis:
            **(i)**     That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";
            **(ii)**     That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;
            **(iii)**     That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises

rented to you or temporarily occupied by you with permission of the owner; or

**(iv)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion g. of Section I - Coverage A - Bodily Injury And Property Damage Liability.

**(b)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured.

**(2)** When this insurance is excess, we will have no duty under Coverages A or B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

**(3)** When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(a)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(b)** The total of all deductible and self-insured amounts under all that other insurance.

**(4)** We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

     **c.**    **Method Of Sharing**

            If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first. If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

Ex. A at 20-21.

37.    The GL Policy contains the following pertinent definitions under Section V:

**SECTION V – DEFINITIONS**

. . .

**3.**    "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

. . .

**13.**    "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

. . .

**15.**    "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.  Waste includes materials to be recycled, reconditioned or reclaimed.

**16.**    "Products-completed operations hazard":

    **a.**    Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

        **(1)**    Products that are still in your physical possession; or

        **(2)**    Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

**(a)**    When all of the work called for in your contract has been completed.

**(b)**    When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

**(c)**    When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

Ex. A at 22-24.

38.    The GL Policy contains a General Liability Elite Extension endorsement, which contains the following relevant provisions:

**GENERAL LIABILITY ELITE EXTENSION**

. . .

The COMMERCIAL GENERAL LIABILITY COVERAGE FORM is amended to include the following clarifications and extensions of coverage.  The provisions of the Coverage Form apply unless modified by endorsement.

**A.**    **EXPECTED OR INTENDED INJURY**

**Section I – Coverage A,** Exclusion **a.**  is amended as follows:

a.    "Bodily injury" or "property damage" expected or intended from the standpoint of an insured.  This exclusion does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force to protect persons or property.

. . .

**F.**    **MEDICAL PAYMENTS**

If **Section I – Coverage C. Medical Payments Coverage** is not otherwise excluded from this Coverage Form:

The requirement in the Insuring agreement of Coverage **C.,** that expenses must be incurred and reported to us within **one year** of the accident is changed to **three years.**

. . .

**O.    DUTIES IN THE EVENT OF OCCURRENCE, OFFENSE, CLAIM OR SUIT**
**Section IV – Commercial General Liability Conditions** paragraph **2.** is amended to add the following:
**e.**    The requirement in Condition **2.a.** that you see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim, applies only when the "occurrence" or offense is known to:

. . .

**(4)**    An "executive officer" or insurance manager, if you are a corporation;

. . .

**S.    MENTAL ANGUISH**
**Section V. – Definition 3.** is replaced by the following:
"Bodily injury" means bodily injury, sickness or disease sustained by a person, including mental anguish or death resulting from bodily injury, sickness or disease.

. . .

Ex. A at 51-56.

39.    In addition, the GL Policy contains a Water Well Drillers Limited Pollution Coverage- Work Site Endorsement which provides, in relevant part, the following:

## WATER WELL DRILLERS LIMITED POLLUTION COVERAGE – "WORK SITE"

**A.    Section I – Coverages** is amended to include the following:
**LIMITED POLLUTION COVERAGE – "WORK SITE"**
**1.    Insuring Agreement**
**a.**    We will pay those sums that the insured becomes legally obligated to pay as compensatory damages because of "bodily injury" or "property damage" because of "environmental damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit"

seeking damages for "bodily injury" or "property damage" because of "environmental damage" to which this insurance does not apply.  We may, at our discretion, investigate any "pollution incident" and settle any claim or "suit" that may result.

      . . .

**b.**    This insurance applies to "bodily injury", "property damage" or "clean-up costs" caused by a "pollution incident" only if:

    **(1)**    The "bodily injury", "property damage" or "clean-up costs" arise out of a "short term pollution event".  The "bodily injury" or "property damage is caused by an "occurrence" that takes place at or from a "work site" within the "coverage territory";

        **(a)**    Caused by "your work" while performing water well drilling operations; or

        **(b)**    Caused by "your work" which was not completed.

    **(2)**    The insured's responsibility to pay damages because of "bodily injury" or "property damage" is determined in a "suit" on the merits in the "coverage territory" or in a settlement we agree to.

      . . .

**3.**    **Exclusions**

The insurance provided by this endorsement does not apply to:

**a.**    **Prior "Pollution Incidents"**

"Bodily injury", "property damage" or "environmental damage" caused or contributed by any "pollution incident" that commenced prior to the effective date shown in the Declarations.

**b.**    **Expected or Intended Injury**

"Bodily injury", "property damage" or "environmental damage" expected or intended from the standpoint of any insured.

      . . .

**e.**    **Intentional Acts**

"Bodily injury", "property damage", or "environmental damage" arising out of any intentional, unintentional, deliberate or willful violation of any applicable statute,

governmental law, regulation, ordinance, directive, order or rule by you or anyone acting on your behalf.

. . .

**g.    Products-Completed Operations Hazard**

"Bodily injury" or "property damage" included within the "products-completed operations hazard" and arising out of an emission, discharge, release or escape of "pollutants" which originates away from any insured site.

. . .

**k.    Failure To Comply With Environmental Laws**

"Bodily injury", "property damage" or "environmental damage" arising out of a "pollution incident" which results from or is directly or indirectly attributable to failure to comply with any applicable statute, regulation, ordinance, directive or order relating to the protection of the environment and promulgated by any governmental body, provided that failure to comply is a willful or deliberate act or omission of:

(1)    The insured;

(2)    You or any of your members, managers, partners or "executive officers"; or

(3)    Your "employees".

. . .

**E.    POLLUTION LIABILITY CONDITIONS**

**2.    Duties In The Event Of A "Pollution Incident", Claim or Suit**

a.    You must see to it that we are notified promptly of a "pollution incident" which may result in a claim.

. . .

**F.    AMENDED DEFINITION**

The following definitions under **Section V – Definitions** is amended to read:

**1.**    "Products-Completed Operations Hazard":

**a.**    Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

**(1)**    Products that are still in your physical possession; or

**(2)**    Work that has not yet been completed or abandoned.  However, "your work" will be deemed completed at the earliest of the following times:

**(a)**    When all of the work called for in your contract has been completed.

**(b)**    When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

**(c)**    When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

. . .

**G.    ADDITIONAL DEFINITIONS**

The following definitions are added to **Section V – Definitions** for purposes of this endorsement only:

. . .

**2.**    "Environmental Damage" means the injurious presence in or upon land, the atmosphere, or any water course or body of water of solid, liquid, gaseous or thermal contaminants, irritants or "pollutants", which directly results in any physical damage to tangible property.

**3.**    "Pollution Incident" means the actual emission, discharge, release, or escape of "pollutants" at or from a "work site" that results in "bodily injury", "property damage" or "environmental damage".  The entirety of any such emission, discharge, release or escape will be deemed to be one "pollution incident".

**4.**    "Short-Term Pollution Event" means a discharge, dispersal, release r escape of "pollutants" and:

**a.**    Begins during the policy period;

**b.**    Begins at an identified time and place;

**c.**     Ends, in its entirety, at an identified time within seventy-two (72) hours of the beginning of the discharge, dispersal, release or escape of the "pollutants";

**d.**     You notify us as soon as practicable but no more than thirty (30) days after its ending.

**e.**     Does not originate from an "underground storage tank". To be a "short-term pollution event", the discharge, dispersal, release or escape of "pollutants" need not be continuous. However, if the discharge, dispersal, release or escape is not continuous, then all discharges, dispersals, releases or escapes of the same "pollutants" from essentially the same source, considered together, must satisfy Provisions **a.** through **e.** of this definition to be considered a "short-term pollution event."

. . .

**7.**     "Work Site" means any premises, site or location on which your or your employees are performing water well drilling operations at a "work site" or location in connection with such operations by any insured.

Operations at a "work site" does not include; to test for, monitor, clean-up, remove, contain, treat, detoxify or neutralize or in any way respond to or assess the effects of, "pollutants".

Ex. A at 58-65.

## C.     Relevant Umbrella Policy Provisions

40.     The Umbrella Policy contains Commercial Liability Umbrella

Coverage Form CU 00 01 04 13, which provides Bodily Injury and Property

Damage Liability Coverage under Section I, Coverage A as follows:

**SECTION I – COVERAGES**
**COVERAGE A – BODILY INJURY AND PROPERTY**
**DAMAGE LIABILITY**
**1.     Insuring Agreement**

**a.**     We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" because of "bodily

injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking damages for such "bodily injury" or "property damage" when the "underlying insurance" does not provide coverage or the limits of "underlying insurance" have been exhausted.  When we have no duty to defend, we will have the right to defend, or to participate in the defense of, the insured against any other "suit" seeking damages to which this insurance may apply.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.  At our discretion, we may investigate any "occurrence" that may involve this insurance and settle any resultant claim or "suit" for which we have the duty to defend.

. . .

Ex. B at 8.

41.    The Umbrella Policy contains the following pertinent exclusions

applicable to Coverage A:

> **2.    Exclusions**
> This insurance does not apply to:
> **a.    Expected Or Intended Injury**
> "Bodily injury" or "property damage" expected or intended from the standpoint of the insured.  This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.
> . . .
> **i.    Pollution**
> **(1)**    "Bodily injury or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration release or escape of "pollutants" at any time; or

> **(2)** "Pollution cost or expense".
> This exclusion does not apply if valid "underlying insurance" for the pollution liability risks described above exists or would have existed but for the exhaustion of underlying limits for "bodily injury" and "property damage".  To the extent this exclusion does not apply, the insurance provided under this Coverage Part for the pollution risks described above will follow the same provisions, exclusions and limitations that are contained in the applicable "underlying insurance", unless otherwise directed by this insurance.

Ex. B at 9-10.

42.    The Umbrella Policy also contains the following Commercial

Umbrella Amendment of Coverage endorsement, which in pertinent part, modifies

the above pollution exclusion as follows:

**COMMERCIAL UMBRELLA AMENDMENT OF COVERAGE**

. . .

> **A.**    The following paragraph is added to **Section I – Coverages, Coverage A – Bodily Injury And Property Damage Liability, 2. Exclusions** Paragraph **i. Pollution:**
>
> This exception does not apply at or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations, except when the "underlying insurance" for the pollution liability risk arises from a Business Auto Coverage Form or a Motor Carrier Coverage Form.

Ex. B at 47.

43.    In addition to the forgoing exclusions, the Umbrella Policy also

contains a lead exclusion endorsement as follows:

## EXCLUSION – LEAD

. . .

The following exclusion is added to Paragraph **2., Exclusions of Coverage A – Bodily Injury and Property Damage Liability (Section I – Coverages)** and Paragraph **2., Exclusions of Coverage B – Personal and Advertising Injury Liability (Section I – Coverages).**

This insurance does not apply to:

**1.**     "Bodily injury," "property damage," or "personal injury and advertising injury" arising out of the actual, alleged or threatened ingestion, inhalation, absorption of, exposure to, or presence of "lead".

. . .

"Lead" means lead in any form, whether in combination with, an ingredient of, or as a component of any substance or material.

All other terms, conditions, exclusions and provisions of the policy apply.

Ex. B at 51.

44.     The Umbrella Policy also contains the same Exclusion – Mixed Dust Pneumoconiosis Lung Disease or Ailment Endorsement as the GL Policy.

Ex. B at 55.

45.     The Umbrella Policy contains the following pertinent conditions under Section IV:

### SECTION IV – CONDITIONS

. . .

**5.     Other Insurance**

**a.**     This insurance is excess over, and shall not contribute with any of the other insurance, whether primary, excess, contingent or on any other basis. This condition will not apply to insurance specifically written as excess over this Coverage Part.

When this insurance is excess, we will have no duty under Coverages A or B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

**b.**   When this insurance is excess over other insurance, we will pay only our share of the "ultimate net loss" that exceeds the sum of:
**(1)**   The total amount that all such other insurance would pay for the loss in the absence of the insurance provided under this Coverage Part; and
**(2)**   The total of all deductible and self-insured amounts under all that other insurance.

Ex. B at 20.

46.   The Umbrella Policy contains the following pertinent definitions under Section V:

**SECTION V – DEFINITIONS**
. . .
**3.**   "Bodily injury" means bodily injury, disability, sickness or disease sustained by a person, including death resulting from any of these at any time.  "Bodily injury" includes mental anguish or other mental injury resulting from "bodily injury".
. . .
**13.**   "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.
. . .
**15.**   "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.  Waste includes materials to be recycled, reconditioned, or reclaimed.
. . .
**17.**   "Products-completed operations hazard"

    **a.**    Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

    **(1)**    Products that are still in your physical possession; or

    **(2)**    Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

        **(a)**    When all of the work called for in your contract has been completed.

        **(b)**    When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

        **(c)**    When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project. Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

. . .

**23.**    "Ultimate net loss" means the total sum, after reduction for recoveries or salvages collectible, that the insured becomes legally obligated to pay as damages by reason of settlement or judgments or any arbitration or other alternate dispute method entered into with our consent or the "underlying insurer's" consent.

**24**.    "Underlying insurance" means any policies of insurance listed in the Declarations under the Schedule of "underlying insurance".

Ex. B at 22-25.

    47.    Other provisions, conditions, or exclusions in the Policies may also limit or preclude EMC's obligations under the circumstances presented.

### III.    COUNT I – DECLARATORY JUDGMENT

48.    EMC repleads and incorporates by reference Paragraphs 1-47 above.

49.    EMC has no duty to defend or indemnify Van Dyken in the Underlying Action, in whole or in part, due to one or all of the following reasons:

a.    The Lead Exclusion Endorsement which precludes coverage for "bodily injury", "property damage", or personal and advertising injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected ingestion of, inhalation of, absorption of, exposure to, or presence of "lead" excludes coverage under both the GL Policy and the Umbrella Policy for some or all of the claims against Van Dyken in the Underlying Action.

b.    The GL Policy's Pollution Exclusion, which precludes coverage for "bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants", excludes coverage under the GL Policy for some or all of the allegations in the Underlying Action.

c.      The Umbrella Policy's Pollution exclusion, which precludes coverage for "bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration release or escape of "pollutants" at any time, excludes coverage under the Umbrella Policy for some or all of the allegations in the Underlying Action.

d.      The claims against Van Dyken do not allege "bodily injury" caused by an "occurrence", and therefore the Policies do not provide coverage for the Underlying Action.

e.      The Expected or Intended Injury Exclusion, which precludes coverage for "bodily injury" expected or intended from the standpoint of an insured, excludes coverage under both the GL Policy and the Umbrella Policy for some or all of the allegations in the Underlying Action.

f.      The Mixed Dust Pneumoconiosis, Lung Disease or Ailment Exclusion, which precludes coverage for injuries arising out of, resulting from or in any way related to, in whole or in part, mixed dust pneumoconiosis or any lung disease, including but not limited to, pleural plaques, asbestosis, silicosis, lung cancer, emphysema, bronchitis, or other pneumoconiosis-related ailment, including, but not limited to, arthritis, cancer, lupus, heart, kidney or gallbladder

disease, excludes coverage under the Policies for some or all of the allegations in the Underlying Action.

g.      There is no coverage under the GL Policy's Water Well Drillers Limited Pollution Coverage Endorsement because the Underlying Action does not allege "bodily injury" because of "environmental damage" arising out of a "short-term pollution event," taking place at a "work site," and either caused by "your work" while performing water well drilling operations; or caused by "your work" which was not completed.

h.      Even if there is coverage for the Underlying Action under the GL Policy's Water Well Drillers Limited Pollution Coverage's general coverage provision, the Prior "Pollution Incidents" Exclusion, Intentional Acts Exclusion, Products-Completed Operations Hazard Exclusion, and Failure to Comply with Environmental Laws Exclusion bars coverage for all or some of the allegations in the Underlying Action.

i.      There is no coverage under the Policies' because Van Dyken failed to comply with the Policies' conditions requiring Van Dyken to notify EMC "as soon as practicable" when it became aware of the Underlying Action.

j.      Under the Umbrella Policy's Other Insurance provision, even if coverage is available, the Umbrella Policy is excess over any other insurance coverage available to Van Dyken.

4859-9074-5214                                                                                          32

k.      Under the GL Policy's Other Insurance provision, even if coverage is available, the GL Policy is excess over insurance that is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for Van Dyken's "work" or any other primary insurance available to Van Dyken covering liability for damages arising out of the premises or operations, or the products and completed operations, for which it has been added as an additional insured.

## IV.   PRAYER FOR RELIEF

**WHEREFORE,** EMC requests the following relief:

1.      For Count I for Declaratory Judgement, a judicial declaration that EMC has no duty to defend or indemnify Van Dyken, in whole or in part, in connection with the Underlying Action.

2.      In the alternative, for Count I for Declaratory Judgment, a judicial declaration that the Umbrella Policy is excess over other liability insurance available to Van Dyken.

3.      In the alternative, for Count I for Declaratory Judgment, a judicial declaration that the GL Policy is excess over insurance that is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for Van Dyken's "work" or any other primary insurance available to Van Dyken covering liability for damages arising out of the premises or operations, or the products and completed operations, for which it has been added as an additional insured.

4.      For other such relief as the Court deems just.


DATED this 12th day of September, 2023.

                         /s/ Leah T. Handelman

                      Attorneys for Plaintiffs